John M. Vrieze, CSB #115397
William F. Mitchell, CSB #159831
MITCHELL, BRISSO, DELANEY & VRIEZE
Attorneys at Law
814 Seventh Street
P. O. Drawer 1008
Eureka, CA 95502
Tel: (707) 443-5643
Fax: (707) 444-9586

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL L. GENSAW III, et al., | CASE NO.: C-07-3009-TEH |
| Plaintiffs, | **DECLARATION OF WILLIAM F. MITCHELL AND ATTACHED EXHIBIT** |
| vs. | |
| DEL NORTE COUNTY UNIFIED SCHOOL DISTRICT, et al., | DATE: January 8, 2008<br>TIME: 10:00 a.m.<br>CTRM: 12, 19th Floor<br>Honorable Thelton E. Henderson |
| Defendants. | |

MITCHELL, BRISSO,
DELANEY & VRIEZE
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

DECLARATION OF WILLIAM F. MITCHELL AND ATTACHED EXHIBIT

I, WILLIAM F. MITCHELL, declare as follows:

1. I am an attorney and partner in the law firm Mitchell, Brisso, Delaney & Vrieze, attorneys for defendants herein.

2. Attached to this declaration as **Exhibit A** is a true and correct copy of a letter dated April 25, 2006 from the United States Department of Education, Office of Civil Rights, to the Del Norte County Unified School District.

3. If called to testify, I could and would competently testify to the above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 29th day of November, 2008, at Eureka, California.

_____
WILLIAM F. MITCHELL

MITCHELL, BRISSO, DELANEY & VRIEZE
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

1

DECLARATION OF WILLIAM F. MITCHELL AND ATTACHED EXHIBIT

# *EXHIBIT A*



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

REGION IX
Old Federal Building
50 United Nations Plaza, Room 239
San Francisco, California 94102

April 25, 2006

Ms. Janice C. Moorehouse
Superintendent
Del Norte County Unified School District
301 West Washington Boulevard
Crescent City, California 95531

(In reply, please refer to case no. 09-06-1037.)

Dear Superintendent Moorehouse:

The U.S. Department of Education, Office for Civil Rights (OCR), has completed investigation of the above-referenced complaint filed against the Del Norte Cou Unified School District. The issue investigated by OCR was whether the Dist discriminated against sixth through eighth grade students at Margaret Keating Sch based on national origin (Native American) when it reassigned them to Crescent Middle School in 2005.

OCR enforces Title VI of the Civil Rights Act of 1964 and its implementing regulati Title VI prohibits discrimination on the basis of race, color or national origin in progra and activities operated by recipients of Federal financial assistance. The Dist receives funds from the Department and is subject to Title VI and the regulation.

OCR has concluded that the preponderance of the evidence showed non-complia with Title VI with respect to the District's action. To investigate this complaint, O reviewed documentation submitted by the complainant and by the District and data student enrollment, and interviewed the Complainant and the District Superintende The following is a summary of the applicable legal standards, the facts gathered dur the investigation and the conclusions in this case:

Under the Title VI regulation at 34 C.F.R. §100.3(a), a schools district may not exclu students from participation, deny them benefits, or otherwise subject them discrimination on the basis of race, color, or national origin with regard to any aspec its program. Under §100.3(b)(ii),(iii) and (iv) districts may not, on the basis of race, c or national origin, provide individuals with any service or benefit that is different o provided in a different manner from that provided to others, may not subject individu to separate treatment, and may not restrict individuals in any way in the enjoymen any advantage or privilege enjoyed by others.

Page 2 – (09-06-1037)

To determine whether Native American students were discriminated against on the ba[sis] of race under Title VI, OCR looked at whether there was evidence that the students we[re] treated differently than students of other races/national origins under sim[ilar] circumstances, with respect to the provision of education services, benefits, [or] opportunities. If so, OCR examined whether the District was able to provi[de] nondiscriminatory reasons for its actions and whether there was evidence that the stat[ed] reason were a pretext for discrimination. To find a violation of Title VI and the regulatio[n] the evidence must show that it is more likely than not that the District's actions were bas[ed] on the students' race/national origin.

## Background

In June 2005 the District Board of Trustees voted to re-assign all sixth through eigh[th] grade students from Margaret Keating Elementary School, a K-8 school in t[he] community of Klamath, to a middle school in Crescent City. The Student enrollment [at] Margaret Keating was, at the time, 67% Native American. The percentage of Nati[ve] American students at all other elementary schools was 23% or less. In Septemb[er] 2005, OCR received this complaint against the District from a community memb[er] representing Native American parents and students, alleging that the Board select[ed] Margaret Keating students, and not students from other schools, to be re-assign[ed] because they are Native American.

After receiving the complaint, OCR learned that the same complaint had been filed w[ith] the District through its internal complaint process. Under our standard procedures, [we] closed the OCR complaint pending the outcome of the District investigation, notifyi[ng] the complainants that a new complaint could be filed with OCR if they believed that t[he] District's process was not adequate. The internal investigation was conducted by [a] private consultant. The consultant reviewed all available records and documentatio[n] conducted interviews with District representatives and community members, and w[as] extremely thorough. However, the report issued by the consultant on October 17, 20[0?] was limited to factual findings. Neither the consultant nor the District made [a] determination on the complainant's allegation that the re-assignment of Marga[ret] Keating students was discriminatory based on national origin. Because of this t[he] complainants filed a new complaint with OCR and we initiated an investigation into t[he] allegation of discrimination.

Our investigation found the following:

- The District enrolls approximately 4000 students. The District enrollment h[as] been decreasing and the District has been facing financial problems.

- In both 2003 and 2004, the District began to consider closing one or mo[re] schools, reassigning students and/or adjusting attendance zones to address

Page 3 – (09-06-1037)

budget crisis. However, other cost-saving measures were implemented and closures or reassignments took place.

- In September 2004 the District established a "Blue Ribbon Committee" to revi[ew] the situation and make recommendations on how to address the financial a[nd] educational needs of the District. Three subcommittees were formed to exam[ine] finance, facilities and programs. The facilities subcommittee studied enrollm[ent] patterns and projections, room usage at all elementary schools, and ot[her] factors.

- On February 24, 2005, the Committee presented its report to the Board, in wh[ich] it made recommendations on cost-savings and utilization of the District's schoo[ls]. The report made the following recommendations:

    - <u>Mountain Elementary School</u>: The report stated that this school was [an] underutilized facility. It noted that, while closing the facility would real[ize] the greatest savings, the Committee was concerned about the impact [of] busing young children to other schools. The report concluded that t[he] school should be changed to a K-5 school and students in grades 6[-8] could be bused "into town" without any additional expense using existi[ng] District transportation.
    - <u>Margaret Keating Elementary School</u>: The reported noted that this scho[ol] was underutilized, had twice as many children as Mountain School, a[nd] was equally distant from Crescent City. The report stated that closing t[he] school and busing all the students would "be of concern". The Committ[ee] recommended reassigning students in grades 6-8 to Crescent Elk Midd[le] School in Crescent City.
    - <u>Pine Grove Elementary School</u>: The report stated that the largest savin[gs] would be realized from closing an "in-town school", i.e. in Crescent Ci[ty], and recommended closing Pine Grove because of the number of unus[ed] classrooms, the percentage of students that were already being bused [to] Pine Grove from other areas, and its proximity to other schools for whi[ch] boundary changes were recommended.
    - <u>Boundary changes</u>: The Committee recommended changing t[he] attendance boundaries for two other elementary schools to accommoda[te] the population from Pine Grove.
    - <u>Sixth grade students</u>: It was recommended that sixth grade students fro[m] Pine Grove and Mary Peacock be reassigned to Crescent Elk Midd[le] School.

- Enrollment data reported to the California Department of Education for the 200[4-]2005 school year showed the following:

Page 4 – (09-06-1037)

- Mountain Elementary (K-8):
    - Total enrollment: 60
    - Grades 6-8 enrollment: 21
    - Native American: 23.3% of total enrollment
- Margaret Keating (K-8):
    - Total enrollment: 134
    - Grades 6-8 enrollment: 33[1]
    - Native American: 67.2% of total enrollment
- Pine Grove (K-6):
    - Total enrollment 289
    - Grade 6 enrollment: 49
    - Native American: 14.9% of total enrollment.
- Mary Peacock Elementary (K-6)
    - Total enrollment 421
    - Grade 6 enrollment: 67
    - Native American: 8.8% of Total enrollment

- Both Mountain and Margaret Keating are located approximately 20 miles fr Crescent Elk Middle School. Travel distances from home for individual stude could be longer or shorter. Pine Grove and Mary Peacock are both located Crescent City. Reassigned students would not have long distances to travel.

- All the communities affected by the Committee report actively protested recommended changes. The District administration held meetings with all communities that could be affected, to discuss parent concerns. T complainant asserted that there was a lack of input from the Klamath commur prior to the Board's decision. However, the record showed that public meetir were held in the Klamath area on February 28, April 25 and May 25, 2005.

- Issues raised by the Margaret Keating community included concerns about h the long bus ride to Crescent City would affect the length of the school day the students, and the available time to study and to participate in tribal activit and events, as well as the difficulty for parents, some of whom who did not ha cars, if they needed to go to their child's school or wished to participate in sch activities. At some point, it appears that an informal survey of parents a students was conducted concerning the advantages and disadvantages of t change.

- Prior to Board action on the recommendations, the staff and administration Mountain School submitted suggestions for reducing personnel costs at tl school, to avoid the reassignment of students.

---

[1] The District reported the number at 22 at the end of the 2004-2005 school year.

Page 5 – (09-06-1037)

- In June 2005, the Board voted to re-assign students in grades 6-8 at Marga[ret] Keating to Crescent Elk Middle for the 2005-06 year. The Board took no act[ion] on any other changes recommended by the Committee.

- Although the former Superintendent subsequently stated that the reassignm[ent] of Mountain School students would be re-visited the next year, there is nothin[g in] the Board minutes at the time of the decision to re-assign Margaret Keat[ing] students that reflects this intention.

- Neither OCR nor the private consultant found any documentation or reco[rd] prepared prior to the Board's decision that explained why the Board reassig[ned] students from Margaret Keating, but did not implement the ot[her] recommendations. There was no discussion of this question in the minutes [of] the Board meetings that took place between the time of the Commit[tee] recommendations and the Board's vote on June 9.

- In July and August 2005 members of the Margaret Keating community ma[de] presentations at Board meetings to continue to express their objections to the assignment.

- According to the complainant, during discussions about reassignment [of] Margaret Keating students, a Board member referred to some commu[nity] spokespersons as "Yuroks" and stated that Margaret Keating was "not just [an] Indian school." A Board member also referred to the "tribe" or "tribal membe[rs]" when identifying some school representatives and said that if the "tribe" co[uld] come up with $60,000 they could keep grades 6-8 at Margaret Keating. T[he] complainant asserted that these references reflected racial bias.

- Students from Margaret Keating began attending Crescent Elk Middle Schoo[l in] September 2005. The District took steps concerning transportation schedul[es,] curriculum, orientation sessions, and parent meetings to lessen the difficulty [of] the transition.

- On February 23, 2006, the Board voted to transfer grades 6-8 from Mountain School to Crescent Elk.

- The District provided OCR with written statements by Board members that w[ere] prepared in response to the consultant's investigation, and a chronol[ogy] developed for OCR by the Superintendent, describing the reasons for the Ju[ne] 2005 decision to reassign only the Margaret Keating students. OC[R's] understanding of the District's reasons is as follows:

Page 6 – (09-06-1037)

1. A majority of parents and students at Margaret Keating supported the mo
   surveys conducted at Margaret Keating showed this. The District provi(
   several messages from supportive parents.
2. Students would receive a better education, have access to more curricu
   offerings and competitive sports, and be better prepared for high schoo
   they attended a middle school rather than remaining the combined 6-8 sin
   classroom at Margaret Keating.
3. There would be financial savings by the elimination of a teaching positi
   The District could not financially support the combined 6-8 classroom
   Margaret Keating with so few students.
4. More notice of possible reassignment was provided to the community
   Margaret Keating since District officials began discussing reassignment
   students from Margaret Keating in 2003.
5. Mountain School is a new campus that was rebuilt after a fire in 2003.
6. Mountain School staff proposed cost reductions at that school.

- Other evidence relevant to the stated reasons showed the following:

1. Parents and other members of the Klamath community dispute the assert
   that most supported the decision. There is also a record of numero
   protests from the Margaret Keating community at Board and commur
   meetings. The informal survey at Margaret Keating showed parents a
   students identifying an approximately equal number of advantages a
   disadvantages.
2. While the educational benefits seem apparent, this is equally applicable
   both Margaret Keating and Mountain. Both schools had one teacher teach
   grades 6-8 in a combined classroom. The existence of educational bene
   for Margaret Keating students does not explain the selection of one sch
   but not another that would have experienced similar benefits.
3. Budgetary constraints can be a legitimate, non-discriminatory reason
   closing and/or consolidating schools. Money was saved by the elimination
   a teaching position at Margaret Keating. However, the other reassignme
   recommended by the Committee would also have produced financial savin
   There was no evidence in the Committee report indicating that a grea
   savings would be realized from reassigning Margaret Keating students th
   reassignment of Mountain students, and the District's financial problems we
   not eliminated by the reassignment of Margaret Keating students.
4. The fact that notice of possible reassignment was given to the Marga
   Keating community earlier than it was given to other schools arguably ma
   the decision less disruptive but again does not explain why only Marga
   Keating school was selected for action.
5. Although Mountain School was a newer, rebuilt facility, this would have be
   relevant if closure of that school had been proposed. However, the sch
   was not proposed for closure. Since the only question was moving

Page 7 – (09-06-1037)

       student from the upper grades, the newer condition of the facility is directly relevant.
6. The Board did not officially request suggestions from all the schc potentially affected and provide notice that its decision would be based on response. Therefore, the fact that Mountain School staff made its c suggestions for budget cuts but Margaret Keating staff did not, is no sufficient basis to explain difference in treatment of the two schools.

## Conclusion

The evidence shows that students from four District schools were considered for assignment to address District financial problems under the Blue Ribbon Committe February 2005 recommendations. The only students selected by the Board of Trustees be reassigned to another school were students from Margaret Keating School. T evidence showed that, in reassigning students from Margaret Keating to a new school miles and approximately 30 minutes away while not reassigning students from the ot identified schools, the District treated the predominately Native American sch differently than schools with predominantly white populations. OCR therefore examir the reasons stated by the District for the different treatment, and whether there w evidence to establish that the decision was based on legitimate educational anc operational reasons and not on national origin.

Preliminarily, as part of the evidence presented to show racial bias, witnesses in supp of the complaint described instances of references by a Board member to "Yuroks" a to "the tribe". The evidence showed that, while these terms may have been used, th were not used in a racially derogatory manner or context. Therefore OCR could i infer racial hostility or overt bias in the Board's decision because of the use of the terms.

The reasons for the decision provided to OCR by the District are described above. O concluded that there was insufficient evidence to substantiate the stated reasons. Fi the Board decision was inconsistent with the recommendations made by its Blue Ribt Committee. Also, neither OCR nor the District consultant found any record prior to contemporaneous with the Board decision that articulated the reasons for the decisi The reasons discussed above were articulated subsequent to the Board's decision a after the OCR complaint was filed, raising questions as to whether they were in fact basis for the decision at the time the decision was made. Further, in reviewing each the specific reasons provided by the District, OCR found that they were not factu supported by the evidence.

School closures and student reassignment are difficult, sensitive and contentious issu for students, parents, staff and administrators in any school. OCR's role is not determine whether the June 2005 decision to reassign the Margaret Keating stude was appropriate or sound. OCR's role is to determine whether the preponderance

Page 8 – (09-06-1037)

the evidence showed that the decision was made for nondiscriminatory reasons. C
concluded there was not sufficient evidence to establish that the decision was made
reasons other than national origin. Therefore, OCR found that the District did
comply with Title VI and the regulation.

In determining a remedy for noncompliance under Title VI, OCR asks school district
take steps to ensure equal treatment of students without regard to race or national ori
As noted above, prior to the conclusion of the OCR investigation, the District took ac
to reassign the Mountain School students in grades 6-8 to Crescent Elk Middle Sch
beginning with fall 2006. OCR has determined there is no basis for requiring
additional remedy. As a matter of technical assistance OCR recommends that, in
future decisions concerning student reassignment, the District take steps to ensure 1
its decisions are based on documented nondiscriminatory criteria.

OCR is closing this case as of the date of this letter. The complainants are being noti
concurrently.

If you have any questions about this letter, please call Zachary Pelchat, Civil Rig
Attorney, at (415) 556-4262.

Sincerely,

Stella Klugman
Team Leader

## PROOF OF SERVICE

I am a citizen of the United States and a resident of the County of Humboldt, over the age of eighteen years and not a party to or interested in the within entitled cause, my business address is 814 Seventh Street, Eureka, California.

On this date, I served the following documents:

**DECLARATION OF WILLIAM F. MITCHELL AND ATTACHED EXHIBIT**

__X__  By placing a true copy thereof enclosed in a sealed envelope with first class postage thereon fully prepaid for collection and mailing on this date and at the place shown, to the party(ies) and at the address(es) set forth below. I am readily familiar with the practice of this business for collecting and processing documents for mailing. On the same day that documents are placed for collection and mailing, they are deposited in the ordinary course of business with the United States Postal Service at Eureka, California.

_____  By personally delivering a true copy thereof to the party(ies) and at the address(es) as set forth below.

_____  By personally faxing a true copy thereof to the party(ies) and at the facsimile number(s) as set forth below.

I declare under penalty of perjury that the foregoing is true and correct. Executed November 29, 2007, at Eureka, California.

*/s/ Kathy Radford*
Kathy Radford

Donald W. Brown
COVINGTON & BURLING
Attorneys at Law
One Front Street
San Francisco, CA 94111